852 F.2d 1349
 128 L.R.R.M. (BNA) 3194, 271 U.S.App.D.C. 382
 NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 1623, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
South Carolina National Guard and the United States
Department of Defense, Intervenors.
 No. 87-1594.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 12, 1988.
Decided Aug. 2, 1988.
 
 Bruce P. Heppen, with whom, H. Stephan Gordon and Alice L. Bodley, Washington, D.C., were on the brief, for petitioner.
 Pamela P. Johnson, Atty., Federal Labor Relations Authority with whom, Ruth E. Peters, Sol., and William E. Persina, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.
 Robert J. Englehart, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance, for respondent.
 Joseph R. Reyna, Atty., Nat. Guard Bureau, with whom, Marc Richman, Atty., Dept. of Justice and James C. Hise, Atty., Nat. Guard Bureau, Washington, D.C., were on the brief for intervenors, South Carolina Nat. Guard and the U.S. Dept. of Defense.
 Before MIKVA and SILBERMAN, Circuit Judges, and PARKER,* Senior District Judge.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 Local 1623 of the National Federation of Federal Employees ("Local 1623" or "the Local") represents technicians who perform maintenance, training, and administrative functions in the South Carolina National Guard. The Local proposed procedures whereby technicians' civilian superiors would intervene on the technicians' behalf when changes in their military status threatened their civilian jobs. The Local also proposed that such changes in military status be subject to appeal prior to any technician's loss of his civilian job. South Carolina's Adjutant General refused to bargain over any part of this proposal, and the Federal Labor Relations Authority ("FLRA" or "the Authority") upheld his decision. Local 1623 now petitions for review. We agree with the Authority that the proposal does not concern a "condition of employment" and therefore is not bargainable.
 
 
 2
 * * *
 
 
 3
 National Guard technicians are both civilian employees and enlistees in National Guard units. The two worlds they simultaneously inhabit are understandably governed by very different rules of employee-employer relations. As members of the Guard, technicians are subject to military authority; as civilian employees, they are covered by the Federal Service Labor-Management Relations Statute, 5 U.S.C. Secs. 7101 et seq. (1982 & Supp. IV 1986) ("the Labor-Management Act") which permits them to bargain over conditions of their employment. 5 U.S.C. Sec. 7103(a)(14)(C) (1982).
 
 
 4
 This court has previously observed that the military side of technicians' employment takes precedence. That precedence is made clear in the National Guard Technicians Act, 32 U.S.C. Secs. 709 et seq. (1982) ("Technicians Act"). We have said of the Technicians Act that "military preparedness is [its] sine qua non," and that its "mandate is to preserve the Guard's military effectiveness and efficiency ... [by] ensuring the Guard's ability to recruit and retain technicians qualified for both their civilian and military roles." American Federation of Government Employees, Local 2953 v. FLRA, 730 F.2d 1534, 1546 (D.C.Cir.1984) (emphasis in original; additional emphasis omitted).
 
 
 5
 The fact that military needs dominate technician employment is reflected in the concept of "compatibility," which is central to the present case. The Technicians Act requires that each Guard technician "be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position." 32 U.S.C. Sec. 709(b) (1982). The authority to designate the military grades that are compatible with various technician jobs has been delegated to the National Guard Bureau, which promulgates a list according to certain criteria. Among these criteria is that the military position utilize the same skills that the technician uses in his civilian job, that corresponding military and technician positions be in the same Guard unit, and that these military and technician positions be comparable in rank so that (for example) a technician does not have a higher military ranking than his civilian superiors.
 
 
 6
 When a technician's military and civilian positions become incompatible (because of a change in either one), the Technicians Act provides that the technician "shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned." 32 U.S.C. Sec. 709(e)(1) (1982). This case involves the union's attempt to forestall such separation. Recognizing that it cannot bargain over military decisions directly, Local 1623 proposes several indirect procedures by which an incompatible technician could have his compatibility restored.
 
 
 7
 Local 1623's bargaining proposal encompasses three suggestions. First, in cases of incompatibility, "the Support Personnel Management Office [a civilian entity within the National Guard] will work with the Military Personnel Office to try and reassign the technician to a compatible position." Secondly, the same civilian Office "will initiate an investigation and seek corrective action" if "it becomes apparent that a technician was made incompatible for the purpose of removing him from his civilian position." Finally, technicians facing separation as a result of incompatibility would have "the right to informally appeal to the Adjutant General, and have their appeal considered prior to separation." Petitioner's brief at 5.
 
 
 8
 In reviewing the South Carolina Adjutant General's refusal to bargain over this proposal, the FLRA considered whether the proposal concerned a bargainable subject under the Labor-Management Act. That Act permits federal employees to bargain only over "conditions of employment," 5 U.S.C. Sec. 7102(2) (1982), which are defined to exclude "policies, practices, and matters ... to the extent such matters are specifically provided for by Federal Statute." 5 U.S.C. Sec. 7103(a)(14) (1982). A substantial line of decisions by the Authority holds that matters involving the military status of Guard technicians are "specifically provided for" by the Technicians Act and thus are not bargainable "conditions of employment." The seminal case in this line, Association of Civilian Technicians, Pennsylvania State Council v. Adjutant General, Commonwealth of Pennsylvania, 3 F.L.R.A. 50 (1980), involved a proposal whereby technicians could appeal their military rankings. The FLRA concluded that since this proposal "concerns a matter in connection with the military aspects of technician employment for members of the bargaining unit, it concerns a subject which is not a 'condition of employment'...." Id. at 55.
 
 
 9
 The Authority has since relied on this principle to conclude that other proposals affecting technicians' military status are unbargainable. In particular, the FLRA has considered two other proposals that would limit the effects of incompatibility. In National Fed'n of Fed. Employees, Local 1655 v. Adjutant General of Illinois, 20 F.L.R.A. 829 (1985), the Authority rejected a proposal to create certain exceptions to the compatibility requirement. Similarly, in National Ass'n of Gov't Employees, Local R14-87 v. Kansas Army Nat'l Guard, 15 F.L.R.A. 52 (1984), the Authority found unbargainable a proposal to give technicians one year to regain compatibility in certain circumstances. The proposal concerned "the military aspect of technician employment" because it "addresse[d] the timing of military assignments." Id. at 53 (emphasis added).
 
 
 10
 Applying the principle from these precedents to Local 1623's proposal, the FLRA concluded in this case that the union could not leverage a change in military status by having civilian officials intervene with military officers on the technicians' behalf or by conditioning technicians' separation from the Guard upon the completion of an appeal. We agree with the Authority's conclusion. The Technicians Act makes clear that the entire question of compatibility is a military issue. The decisions about what criteria should govern compatibility and what precise positions should be compatible are left entirely to the discretion of the Secretary of the Army or of the Air Force. 32 U.S.C. Sec. 709(b) (1982). The statute further specifies that compatability is in no way optional or negotiable; exemptions from the compatibility requirement are possible only "as prescribed by the Secretary." Id. Finally, the statute requires that incompatibility be remedied in one swift way: a technician who is no longer compatible "shall be promptly separated from his ... employment." 32 U.S.C. Sec. 709(e)(1) (1982).
 
 
 11
 These statutory provisions reflect the basic reality that military preparedness is the Guard's overriding goal. To that end, military officials must have the flexibility to assign Guard personnel as they see fit. Local 1623's proposal would have nonmilitary officials attempt to reverse such personnel decisions by intervening in individual cases and exercising their power of persuasion. This promises to subject the compatibility principle to civilian influence; the Technicians Act provides to the contrary. We conclude that compatibility is a matter "specifically provided for by Federal statute" and therefore not a bargainable "condition of employment."
 
 
 12
 Local 1623 offers three arguments to counter this conclusion. First, the Local asserts that "a proposal's mere touching upon something that is governed by federal statute does not make it a subject that is specifically governed by federal statute." Petitioner's brief at 14. The statement is unexceptionable so far as it goes, but it clearly does not describe the present case. If it were true that Local 1623's proposal "merely touches" technicians' military status, the proposal would serve no purpose. The union obviously expects that, by having civilian officials intervene in military decisions or by requiring completion of an appeal before the decisions go into effect, those decisions will be significantly altered. Thus, for example, the first prong of the proposal calls for civilian officials to work with a military office "to try to reassign the technician into a compatible position." Plainly stated, the Local hopes to convince military officials to assign personnel in some manner other than the one they originally thought best. Similarly, the second prong of the proposal would have civilian officials "seek corrective action" when they believe a military assignment is improper. This part of the proposal must do more than "merely touch" on military matters if it is to have any effect.
 
 
 13
 Local 1623 also reminds us that the Labor-Management Act only excludes a proposal from bargaining if it is "specifically" provided for by statute. The provisions of the Technicians Act governing compatibility do not specifically countermand the Local's proposal, and thus the union argues that the proposal is not proscribed. We think the Local fails to appreciate the special way in which military matters are excluded from bargaining. This is not a situation in which a statute supplies a basic framework for carrying out a federal mission, whose interstices can then be filled by employee-management agreements. As we have said, the military side of the National Guard lies wholly outside of the collective bargaining realm. It is for this reason that we interpret the Technicians Act's outline of the compatibility requirement, with its delegation of responsibility to the Army and Air Force Secretaries, as an exclusive grant of authority. The Local cannot negotiate a derogation of that authority.
 
 
 14
 Finally, Local 1623 heavily relies on this court's decision in Library of Congress v. FLRA, 699 F.2d 1280 (D.C.Cir.1983), for the proposition that a union can bargain to secure an agency's best efforts toward influencing another agency's decision. In that case, we found that the Library of Congress did have to bargain over a proposal that required it to work with the Architect of the Capitol to influence the design of a new Library building. Local 1623 argues that, just as the Library employees could not require the Architect of the Capitol to take particular actions (but could try to influence such actions through the employees' own employer), so the Guard technicians cannot alter military decisions directly but should be able to influence those decisions through their civilian superiors.
 
 
 15
 The analogy to Library of Congress does not bear close scrutiny, for there is a fundamental difference between these two cases. In Library of Congress, the agency refused to bargain over a proposal "for the sole reason that the employing agency possesse[d] only the power to recommend, and not to implement, any proposed changes." Id. at 1286. In rejecting this reasoning, we necessarily assumed that the Library could recommend a library design to the Architect of the Capitol and that such recommendations posed no threat to the Architect's autonomy. By contrast, we do not believe that civilian officials within the National Guard have the power to "recommend" changes in military personnel decisions, and we believe the military's autonomy would be undermined if it were required to "work with" civilian officials who make such recommendations. We reiterate our earlier point: the military enjoys special status, and its decisions involving the organization of security forces are especially shielded from outside interference. We conclude that Library of Congress is simply inapposite to the present case.
 
 CONCLUSION
 
 16
 The combined effect of the Labor-Management Act and the Technicians Act is to give National Guard technicians a limited right to negotiate over conditions of employment: But that right is circumscribed by the reality that a technician's military status will often impinge on his civilian status and that, when this happens, the needs of the military must prevail. The Authority's decision is
 
 
 17
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d)